PROB 12
(02/05-D/CO)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

U. S. A. vs. PEDRO MORALES                    Docket Number: 13-cr-00245-WJM-01

### Petition for Issuance of Warrant Due to Violations of Supervised Release

COMES NOW, Lisa Pence, probation officer of the Court, presenting an official report upon the conduct and attitude of Pedro Morales who was placed on supervision by the Honorable Robert Holmes Bell, sitting in the Court in the Western District of Michigan, on the 6th day of April, 2006, who fixed the period of supervision at five (5) years, and imposed the general terms and conditions theretofore adopted by the Court and also imposed special conditions and terms as follows:

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall participate in a program of testing and treatment for substance abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer, and shall pay at least a portion of the cost according to his ability as determined by the probation officer.

3. The defendant shall refrain from all use of alcoholic beverages.

4. The defendant shall not associate with anyone using or possessing controlled substances.

5. The defendant shall perform 300 hours of community service as directed by the probation officer.

6. The defendant shall be employed.

**On June 12, 2013, jurisdiction of the defendant's case was transferred from the Western District of Michigan to the District of Colorado.**

RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

See attachment hereto and herein incorporated by reference.

PRAYING THAT THE COURT WILL ORDER the issuance of a warrant due to violations of supervised release and that the petition and warrant be sealed until the defendant's arrest. Subsequent to the arrest of the defendant, it is further recommended that the Court consider placing the defendant in a residential reentry center.

ORDER OF THE COURT

Considered and ordered this 12 day of June, 2013, and ordered filed under seal and made a part of the record in the above case.

_____
William J. Martinez
U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.

_____
Lisa Pence
U.S. Probation Officer

Place: Denver, Colorado
Date: June 12, 2013

## ATTACHMENT

On January 21, 2011, the defendant's term of supervised release commenced. The same day, the conditions of supervised release were read and explained to the defendant and he acknowledged in writing that the conditions had been read to him, that he fully understood the conditions, and that he was provided a copy of them. This process was repeated when I assumed supervision of the defendant on February 10, 2012.

The defendant has committed the following violation of supervised release:

**1.     POSSESSION AND USE OF A CONTROLLED SUBSTANCE**

On March 2, 2013, the defendant tested positive at Lutheran Medical Center in Wheatridge, Colorado, for the presence of amphetamine in his system. He was diagnosed by medical staff with methamphetamine intoxication. This use of a controlled substance constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

The defendant commenced supervised release on January 21, 2011. Standard Condition 7 on the defendant's judgment states, "[T]he defendant shall refrain from use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substances, except as prescribed by a physician."

On March 1, 2013, the defendant telephoned me and sounded as if he was crying. He said he had lost his job. When I asked if anything else was wrong, he said there was but he could not tell me over the telephone. I was aware that the defendant's newborn baby almost died recently and that he was under heightened stress. I asked him to come into the office and he agreed.

When the defendant failed to arrive at my office, I called him and left a voice mail. The following day I was in the field and again tried to reach him. He subsequently called me and told me a very strange story that I have since confirmed with Denver police officers.

The defendant said he has been receiving threats for some time and became very anxious on March 1, 2013. His mother-in-law gave him a Xanax pill to "calm down" and the defendant consumed alcohol. An acquaintance, whom he only knows as "Primo," also made him some unidentified tea. The defendant said he later took two of his children to run errands. While driving, a man started following them and tried to run them off the road with his truck. The defendant's children corroborated this story.

In fear for his family's safety, the defendant telephoned 911 and Denver police officers responded. The defendant said he did not believe they were "real" police officers and resisted their contact because he believed they were kidnaping him and his children.

Denver police officers confirm that the defendant refused to believe they were legitimate police officers and it took eight officers to restrain him. Officers believed he was either mentally ill or under the influence of methamphetamine. The defendant's wife was called to pick up the children and the defendant was taken to a hospital for a 72-hour mental health hold.

As I instructed, the defendant later provided me with hospital records which reflect he had methamphetamine in his system. A subsequent urine test conducted in the U.S. Probation Office on March 4, 2013, was negative for any controlled substances.

The defendant has since acknowledged that he was associating with individuals whose backgrounds were unknown to him, that he took Xanax that was not prescribed to him, and that he was consuming alcohol while on supervision (during holidays as well as on March 1, 2013). Until June 11, 2013, he denied knowingly ingesting methamphetamine.

## 2. POSSESSION AND USE OF A CONTROLLED SUBSTANCE

On June 11, 2013, the defendant tested positive at the U.S. Probation Office in Denver, Colorado, for the presence of methamphetamine in his system. This use of a controlled substance constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

The defendant commenced supervised release on January 21, 2011. Standard Condition 7 on the defendant's judgment states, "[T]he defendant shall refrain from use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substances, except as prescribed by a physician."

On June 11, 2013, I spoke with the defendant on the telephone about his failure to attend substance abuse treatment on June 10, 2013. The defendant sounded confused and did not appear to know the month of the year. I believed he might be under the influence of a substance so I instructed him to report to my office by 2 p.m. The defendant arrived by 2:30 p.m. He was given a rapid urine screening that was positive for methamphetamine. The defendant initially denied using the drug but then became tearful and said he had used methamphetamine on June 9, 2013. He was distraught and said he needs an "intervention." The defendant expressed anxiety over many aspects of his life, including his relationship with his fiancee, his infant son, the family's financial situation, and his relationship with his father.

The defendant acknowledged that he has repeatedly lied to me about his drug use. The defendant said he has used methamphetamine three times while on supervised release. The first instance was several years ago. He said he had never tried smoking methamphetamine and wanted to do so when it was offered to him. According to the defendant, he enjoyed this first use because it made him "forget [his] problems." He said he did not use again until March 2013 when he purchased the drug from a man named "Primo" after the men had been drinking at a bar. Finally, on June 9, 2013, the defendant went seeking the drug on the streets until he found someone to sell it to him.

The defendant showed lingering effects of the drug in his system as he believed it was May 2013 not the middle of June 2013 and he was unable to initially tell me the day of the week. He was able to immediately identify the name of the President of the United States. The defendant told me he believes he is irrationally jealous and needs an "intervention" for substance abuse as well as mental health treatment.

3. **USE OF ALCOHOL**

On May 16, 2013, I administered two breathalyzer tests on the defendant. They were positive for alcohol, .031% and .028%, respectively. This constitutes a Grade C violation of supervised release.

This charge is based on the following facts:

The defendant commenced supervised release on January 21, 2011. Special Condition 3 on the defendant's judgment states, "The defendant shall refrain from all use of alcoholic beverages."

On May 16, 2013, at approximately 7:30 p.m., Senior Probation Officer Andrea Bell and I arrived unannounced at the defendant's home. He, his fiancee, and friends were sitting in front of the home and appeared to have just finished eating dinner. The defendant and I spoke in the kitchen while he was holding his infant son. I observed a bottle of liquor on the kitchen counter and asked the defendant if he had been drinking. He said no and told me his fiancee was consuming the alcohol. I administered two breathalyzer tests and he tested positive for alcohol, .031% and .028%, respectively. The defendant continued to deny that he consumed alcohol instead saying that he drank Squirt and this must somehow register as alcohol on the breathalyzer. I instructed him to report to my office the following day before 3:00 p.m.

On May 17, 2013, the defendant reported to my office as directed. He said he was drinking Tequila with his fiancee and friends on the previous day. The defendant said his use of alcohol had increased due to stress and he acknowledged drinking three times while on supervised release. His use of alcohol on May 16, 2013, followed a conversation I had with the defendant and his wife on March 4, 2013, in which I made it clear to the defendant that he was not permitted to consume alcohol while on supervised release because it was a violation of his special condition. Based on the defendant's self-report that alcohol was a problem for him as well as his violation of the terms of his judgment, I asked if he would agree to a modification of his supervised release for the ingestion of Antabuse or a comparable substance. He agreed.